Teeuwissen v. Hinds County, MS Okay, Mr. Jacques. I assume that's the way you pronounce it, but if not, please correct me. Mr. Jacques, we're before the Court today on a de novo review of a grant of Hinds County, MISSISSIPPI's motion to dismiss for failure to state a claim by the United States District Court for the Southern District of Mississippi. I am here today representing two lawyers and their firm out of Jackson, Mississippi, Anthony Simon and Peter Teeuwissen. The facts of the case are, Your Honor, well, let me state the issue first. The issue before the Court is whether if a Board of Supervisors that runs a county is specifically authorized by statute to enter into a contract for a particular amount of time, whether that statutory authorization preempts and displaces the Mississippi-recognized common law rule that a Board cannot, by its actions, bind a successor Board to discretionary actions. And the magic words are, by the year, and what that means, right? By the year, and, Your Honor, I don't think there's any dispute in this case as to what that means in this context. There was no dispute of fact that the Board of Supervisors was statutorily authorized by Section 19347 to enter into these contracts for the year, and that the year was, of course, the physical year for the county, which began on October 1st of every year and ended on September 30th. Well, the words, by the year, could mean a calendar year, right? Yes, sir. I suppose they could. That was not contested at the district court level, and pursuant to the way that the elections worked and the Board changed its membership, I believe January 6, 2020, which is a date we're familiar with, in Jackson, Mississippi, there was a Supervisors' meeting. They met and terminated the contract. So the contract, by its terms, reflected the dates under which the contract was effective. So the attorney contracts not only were for a year, but also stated in the contracts that the dates were to be from September I'm sorry, October 1st through September 30th of that year. But the magic word question is really important here, right? Because, am I correct that under Mississippi law, if the legislature is going to displace a long-standing common law background principle, the legislature has to clearly manifest that intent. Is that correct? Clearly. Your Honor, I believe that's correct, and I believe that is what We've got to say this, by the year is a clear manifestation that Mississippi wanted to displace a Mississippi Supreme Court ruling that, you know, the briefs say is pretty essential to democracy. I would, you know, and I'll just add a question to that. When I was, I think you both cited the McQuillan Treatise about municipal law, and it seems to me this is, this principle is very important around the country, but it often depends on the contract. So specifically a proprietary or a business contract, those combined successors. But here's something as quintessential as attorney advice. If an electorate puts a new board in, that board may just not want legal advice from a board that didn't represent, they're going to change direction. They don't want that legal advice. Those lawyers are going to be useless to them. So it doesn't, I guess the question is, doesn't it depend on the type of contract? Your Honor, that's an interesting question. I don't know the answer to that. That was not raised at all in the district. But it's in the McQuillan Treatise that covers this issue, and both parties cite it. I don't think, I don't think we cited it, Your Honor. I apologize. But so your answer would be, to your knowledge, it doesn't depend on the contract. No matter how advisory and discretionary a political entity wants to contract for, they're stuck with what the prior board chose. If it is statutorily author. If it is, okay. So when we look at the case that was the linchpin of the district court's decision, the Mental Health Commission versus the Cleveland case, we find language in that case and also an analysis that goes to the only place the court can go, and that is to the legislative authorization for the board to act. But they could have written it more clearly. They could have said, and we mean to display, you know, we mean to bind successors. They could have. But no one has ever done that. No one has ever done that. There has never been a statute in Mississippi that has done that. When, in the briefs, of course, and in the analysis, Your Honor, by the has the statutory authority to lease for long term. And it divides that analysis up into two separate parts. Does it have the ability to lease? And does it have the ability to lease long term? But the examples the Cleveland court gives are 20, 35, 50 years. Here's it's a one-year provision. Now, I agree there's no principled rule of law distinction there, but I'll ask two other questions, and then I'll let you talk and others. But it looked to me like this was right before the election, relatively close. And number two, there's no dispute the lawyers got paid for services they rendered to the prior board, right? So the dispute is over whether they get money for services to the new board. Are both those propositions right? No, sir, Your Honor. I think my clients would disagree with that from this basis. First of all, they were the attorneys for the year prior, as I understand it. So it was not simply they came in on October 1, 2019, before the election. The necessity of having the contract at that point in time is back to the discussion about the fiscal year of the county. So that you're always going to have an election every four years, I assume, in November. So as they have the election come. So there's no way to avoid a temporal conjunction of the contract implementation and then a following election every four years. I'm sorry, I lost the court. The other question was, were they paid for services? Yes. So that was something that popped up in the appellee's brief, a lack of consideration, which was also not addressed by the district court. We never got into that because it went off on a motion to dismiss. But here's the problem as the court fully appreciates as an attorney. You are practicing in an area. You agree to represent a certain client. There are obligations of representation. There are also obligations of lack of ability to represent other folks due to conflicts of interest. That is why the contract, specifically both contracts, the attorney board contract and the special counsel contract, board attorney contract, had provisions in there that said unless these are terminated for cause, if they're terminated, then the full amount is due and payable under the contract. So it is simply a matter of the wording of the agreement that the county statutorily authorized to enter into applied to the specific contracts before the court in terms of figuring the damages. Thank you. Yes, sir. So that's our client's position is that the contracts were authorized by statute, entered into, approved, put on the minutes, otherwise entirely valid under law. And then we had a political election, new members of the board come in. And I would offer to the because that iteration of the board, if you speak of the iteration in terms of changes at elections, was in fact valid for four years subsequent to the seating of the new board of supervisors. So that board was not bound throughout its term by the actions of the prior board. They were bound up until the year expired on October 1 of 2020. But that contract did not bind the prior board, I mean the subsequent board. And I think that's important because when you look at the Cleveland case, one of the major issues and factual quandaries that the court was presented with was that the actions of the commission in entering into this long-term lease deprived the commission of its ability to exercise its statutorily granted authority to sell and convey the land. If it's leased by one board for 99 years, the next board that comes in cannot sell it. So it is a act that not only exceeds the authority granted to the prior board under the statute, but also prevents the subsequent board from exercising that very same authority given to them under the statute or a different authority. So in your case, the result would be different if it had been a 10-year contract rather than one year. If it was a 10-year, if it was a one-year, one-month contract, Judge Smith, it would have been completely voidable as it exceeded the authorization of the legislative authorization to the board to enter into a yearly contract. Looking at the statute, the legislature has told the boards of supervisors what the period of time has to be. It does not say, the statute does not say you can employ a board attorney for two weeks or six months. It says on a yearly basis. That is the sole statutory authority given by the legislature to the county board of supervisors to employ these attorneys under these, under the statute. I'm still, and you maybe don't, you don't have to comment on it if it's not, if you think it's not relevant under the Mississippi legislature, but it seems to me the cases that relate to, you know, selling land or keeping lights on, those are contractual and business and utilitarian and proprietary. Those are different, but here the suggestion you're making is this new board's got four years to do its work, but for the first year, they lack legal counsel. They're stuck with arguably an elected board that they beat in an election, and to do anything, that board needs legal advice, but they don't want those advisors. They have to, they just lose a year of legal counsel. I fully appreciate, Judge Higginson, the difference between hiring a lawyer and, let's say, entering into a garbage contract. Right, exactly. But let's take it, let's take it to somewhere in between. Hiring a football coach. So, so the state of Mississippi, through the the statute, authorizes only employment of teachers, support staff, administrators, and football coaches for four years. Football coaches are important. Football coaches are important in Mississippi and Louisiana here. So what, what the, the upside of the argument would be, we now come into the legislative authority and to contract with these certain individuals, and we try to draw a line between what may be considered more of a personal services contract or professional contract rather than other things. There is no differentiation in the statutes that would, that would assist the court or assist this court in reaching that determination as to what contracts are viable, valid, and which ones, but let's say, and I'm just going to use his name because he's the current coach, Lane Kiffin, has a four-year deal with a $10 million buyout. Someone in Mississippi decides they don't like that. So somebody resigns from the Board of Institution of Higher Learning. They put somebody on there. Now we have a brand new iteration of the Board of Institutions of Higher Learning, and my goodness, we don't like him, and the contract's void. So when you, when you look at the legislative grants of authority, people rely on them. My clients relied on it. My clients didn't enter into a contract that was ultra vires or outside the scope of the specific legislative authority given, and I think that's the crucial issue for this case, and it is the crucial analysis in the Cleveland case. The Cleveland court goes through in detail the Mississippi history of common law, throwing out contracts that were for the lifetime of somebody to watch a water meter or, you know, the city council deciding not to enforce a railroad for paving issues, or all of these long-term contracts are the one at issue in Cleveland, a 99-year lease, which amounted to about $21 million on an $800,000 expenditure for the man that built the building. So the court voids those that are not statutorily authorized, and then in that Cleveland opinion, they come right back in and they say, look, let's show you some examples of ones that are. The 15-year leases, the 25-year leases, the 30-year leases, the 50-year airport leases. So the court itself makes that distinction, that when the statute authorizes a certain amount of time, that is the legislative authority in and of itself expressly to bind the subsequent board with that decision. The legislature told them they could do it, they did it, and it binds the subsequent iteration of that board. So that's where we believe the district court went the certain step, recognized the public, the common law rule, but failed to apply the exception as the Cleveland court articulated it, explained it in the analysis. So we believe the district court should be reversed and we'd be allowed to pursue the case. Thank you, Mr. Cooley, and you've saved some time for rebuttal. Mr. Travis. Thank you, ma'am. Please, the court. Judge, I will say that this is, in 24 years, this is my first time to argue in front of this court. Thank you, sir. And you can tell from the cracking of my voice that I am very nervous. I'd be nervous too if you're saying that it's Ole Miss, right? No, sir. No, I know, but the coach he talked about is the Ole Miss. Yes, sir, that's correct. And is your position that the new board could just void his contract? Well, it's my position, based on 100 years of legal precedent, that a predecessor board cannot bind a successor board. I mean, that's what this case is clearly about. So I guess the answer is yes. That's the answer. Well, the answer is that the predecessor board, which this board of supervisors at the time that entered into the contract with the plaintiffs, was a different board. I mean, there were three members on that board that were not on the board when this contract was terminated. What if the board were the same? Say there was an election, everybody's reelected, it's the same board, same membership. Is that a successor board? Of course, if it's a different year. And this is the thing. Of course, because I thought there's case law that says when there's staggered members, the board actually is legally continuous. So if it's the same board, I hadn't thought of that. You're saying the same board that hired the lawyer could fire the lawyer because they're new board? Yes, sir. I believe that based on the contract, because there was a termination provision in the contract. And so this contract, at best, was voidable. So if this board decided that, like you said, Judge, that they didn't, Judge Higginson, that they didn't want these lawyers anymore, they could absolutely void that contract. And so, and that's what they did. And, but this was a predecessor board voiding, or basically binding a successor board. And the district court absolutely got it right when he said that, you know, the successor board, based on which was the Seminole case is a Northeast case, that because there was no authority given, there was no legislative authority given to buy a successor board. And that's been our law in Mississippi for the last hundred years. But he's right. So you don't, you don't, so we don't give any meaning at all to the words by the year? No, absolutely not. Although, although there is a specific statute that allows board of supervisors to hire board attorneys for a one-year period, that doesn't mean that it's guaranteed. And if you look at the language of the contract, the contract says they will be paid for work performed. And so in this situation, they were terminated before the end of the contract. And so for them to be paid... I'm sorry, when you say, the answer is, you say absolutely not to Judge Smith, but what's the, what's the value of, well, two questions. By, by the year, then sounds like it's surplusage, number one, and number two, surplusage. Why even put in by the year, number one, but more importantly, in Cleveland, the court does list contracts by terms of years that are exempt from the common law. So when you say absolutely no in answer, those words... Well, let me, let me, let me tell you the difference. The difference is that in those cases where the court, well, in the Cleveland case, where the court dealt with specific time grants, I'm sorry, I'm sorry, where it dealt with specific time grants, that was because that's what the legislature put in. The legislature gave those boards and those contracts, in those particular statutes, the authority to bind successive boards for those particular years. It has not done that in the case of board attorneys. It has not given the board of supervisors a grant to be able to bind predecessor boards to be able to bind successor boards. And that's where this goes. And again, like I said... But those other statutes were just, you can do it for 20 years, you can do it for 35. It looks almost the same. They don't say, and you can bind a successor, right? His point is, there's no statute anywhere in Mississippi that goes to that level of clarity. Yeah, I agree. But in those cases, though, Judge, the court, the court did not point out that they didn't say you couldn't bind the predecessor boards. And so obviously that's something that the legislature has not taken up. Well, the court hadn't taken up in the Neid case, but specifically, I mean, it talked about it, that there was no express statutory authority to bind successor boards. And so again, like I said, I believe that the district court judge got it right, and this is long-standing legal precedent that predecessor boards cannot bind successor boards. And I believe that the court here should basically affirm the district court's ruling and maintain a dismissal. Again, I think the case is fairly straightforward. The district court judge got it right, and there's nothing else I can say on that matter. I'm happy to answer any other questions. Well, I guess, do you draw, did you cite the McQuillan Treatise? I did. Okay. Do you draw any support from that or not, in particular, in the line of directions I had, which is, well, some contracts can bind, others can't? Or is that not embedded in Mississippi law? No, that, again, I believe that's a great question. And the only thing I know, obviously, for a term of years, the commission was in there with the power to bind a, no, I take that back. I agree. I agree with what you're saying. I don't think, I think all the contracts, as it relates to a predecessor board, as it relates to it binding a successor board, avoid, avoid a bolt. And so that's what the court held. Personal services professional football coach, but also even just keeping the lights on. Well, no, I think it, I think it specifically deals with, like, these type of contracts where you're dealing with political subdivisions, especially like a board of supervisors. It seems as if this case was specifically cut out for these type situations, because, again, you had three members on that board of supervisors that entered into the contract, and there were three new members when they, when they voided out and terminated the contract. And so this is the classic case where you have a predecessor board, and then the election happened, and then a new board, and at their first meeting, they terminated the legal contract. With no suggestion of bad faith, right, that the contract was done at the last minute to just to enrich friends. There's no suggestion of bad faith. So his arguments are correct that it's logical they would have contracted with new attorneys right when they did October. It wasn't a last minute thing to stick the new board with lawyers. There's no suggestion of that in your briefing or in the record, is that correct? Yeah, there are no facts that support that, but there were facts that support that this new board, like you said, didn't feel comfortable with these attorneys, and they wanted to, they wanted new representation, which I think is within their rights based on the long-standing precedent in Mississippi. It's been 100 years, and the legislature has not given a grant to predecessor boards to buy successor boards. And again, I think that the district court got it right. This is something that, you know, we've dealt with in the state for over 100 years, and the legislature has not seen the change, has not decided to change it, and so I think this court should affirm the ruling of the district. Any boards, do you have any guess how many Mississippi exists that would be affected by our decision here? Well, we have 82 counties, and so every board, every board of supervisors would be impacted by this. And this is the thing, Judge, this is how it works. You know, there are other things to consider here too. These facts are specific to this. So look at it like this. These lawyers drafted this contract. These were the same lawyers that had a duty to explain to their clients, I mean, what the implications of this contract were. And so at the time they talked to this predecessor board, these three new supervisors were not on that board, and so they had no idea that this type of contract was in place, and so they didn't want to be, they didn't want to be bound by it, so they were within their rights to terminate it because it was voidable. It was voidable on its face. It's voidable in Mississippi jurisprudence. Are you aware of any laws on the books in Mississippi that do expressly authorize a board to bind a successor board? No, Your Honor, I'm not. I'm not, and I think there's good reason for that because this law is strong on its face. I mean, you know, these boards of supervisors, because those contracts are voidable, you know, exercise their authority to void out those contracts, and I think that's only right as it relates to legal representation. Thank you. Yes, thank you, Mr. Travis. Mr. Henson? May it please the Court. My name is Wesley Penson, counsel for appellee of the Mississippi Association of Supervisors Insurance Trust, otherwise known as MASIT. Appellant has cited one issue for review on appeal, whether or not the district court erred in dismissing plaintiff appellant's federal and state claims for termination of their employment contracts with the Hines County Board of Supervisors, whether a political subdivision can unilaterally void a contract of a specific duration upon the change of identity of one or more members of the political subdivision's board does not refer, relate, or otherwise pertain to MASIT. There is no assignment of error as to the dismissal of MASIT, nor is there any part of appellant's principal brief which mentions this appellee or any issue related thereto. Thus, the issue presented is whether or not an appellant has waived any argument as to error in the dismissal entered by the district court. Appellant's opening brief failed to adequately present or even allege an argument that the district court's order as it pertains to MASIT was legally deficient, and as the Fifth Circuit recently reiterated in SEC v. Halam, any issue not raised in appellant's opening brief is forfeited. Accordingly, appellants have waived these issues and they should not be considered. As such, appellee respectfully requests that this court affirm the order and judgment of MASIT. Thank you, Mr. Pinson. Okay, Mr. Chikwes, you save some time for rebuttal. Your Honors, I think the court perceives the gravity of the ruling that the court's about to make here. In listening to appellee's argument, I was thinking back on clients I have represented who have done transactions with, for example, the Mississippi Development Authority, where they have purchased, entered into lease contracts and purchased large buildings, have gotten tax incentives breaks. Both the state benefits from that and the private entities that contract do as well. Under the rule advanced by Heinz County, however many counties there are in Mississippi, 80 something, you're going to have a whole plethora of contracts that are there, that are deemed valid, that now are called into question if by either an election or someone dies on the board or someone resigns and there's a new replacement, you have a new iteration of the board and the contracts are now voidable. And I think one danger in having a voidable contract is that now the entire contract becomes illusory. So let's say Heinz County has a contract under one of these statutes where they have a 25 year lease and it turns out it's a really good deal because the property has gone down in value. It's a good deal for the county. The lessee comes back and says, you know what? You've got the ability to void this contract at any time. It's an illusory contract. You're not bound to it. I'm not bound to it. We're leaving. So it is not just the private entities that contract with the boards and the public entities that are harmed by a refusal of boards to comply with the legislative grants of authority and honor the contracts for the specific amounts of time referenced and authorized by the legislature. It is also the public entities that are going to suffer as well. Well, you've heard me. I share your concern and we're making an eerie guess. The district court's opinion is very terse. The briefing was minimal below. So if it does have such gravity, affects 80 counties, I agree your argument has been the strongest in terms of contract validity and predictability. Land, utilities. But here we've got a legal advisor. It would be like a public relations expert. Right before you've been voted out, you stick your opponents with a legal advisor for a whole year. Interesting. And there are some minutes in the record that I wish I would ask the court to look at and I have those cited. But the minutes of that meeting are very interesting. Because when the, let's just call it what it is, till the victor goes and spoils, correct? So when the new board comes in, right away, the first day, they say we're going to terminate you and we're going to substitute you with X, Y, and Z other attorneys. Our attorneys. Our attorneys that we choose. And by the way, and it's in the minutes, you're no longer representing the county in the opioid litigation either because we're giving that to this guy. And my client said we don't represent the county in the opioid litigation. So it is, it's politics. I agree that at some point that board needs to have independent counsel. But understand the contract is not between the board members and the attorneys. It is between the county. And the only way that county can act is through its board of supervisors into entering into a contract. So if the county enters into, and our state attorney general does it all the time, enters into contingency fee agreements with outside counsel to go pursue companies for fraud or defrauding the state retirement system, great. We have a change. We're voiding the contract. It is an unworkable situation for both the private enterprises that contract with public entities and the public entities to have public entities be able to put their hand up and push away the specific grants of legislative authority that these private entities rely on in contracting. And to your point, Judge Higginson, there is no direction whatsoever from the legislature that would help a court decide whether an attorney or a football coach or an engineer or a prison dentist is the type of contract that should be voidable. The legislature has already made that determination and it's blanket. That's how the courts look at it. The only way to do this is to look at what the legislature authorized and go with that.